# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TRACEY LAVELLE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.:  5:09-CV-2571-VEH** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Tracey Lavelle ("Mr. Lavelle") brings this action pursuant to 42

U.S.C. § 1614(a)(3)(A) of the Social Security Act.  He seeks review of a final adverse

---

[1]  The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's residual functional capacity ("RFC") determinations from which the framework, analysis, and disposition of this case persuasively flow.  *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RFC finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same); *Shelton v. Astrue*, No. 5:09-CV-1253-VEH, (Docs. 8, 9) (N.D. Ala. Apr. 26, 2010) (same); *Smith v. Astrue*, No. 4:09-CV-1591-VEH (Docs. 20, 21) (N.D. Ala. Oct. 25, 2010) (same); *Smith v. Astrue*, No. 4:09-CV-2191-VEH (Docs. 12, 13) (N.D. Ala. Oct. 28, 2010).

decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2]  Mr. Lavelle timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Lavelle was a 35-year-old male at the time of his hearing before the administrative law judge (the "ALJ") held on July 9, 2009.  (Tr. 29, 57).  Mr. Lavelle did not graduate from high school, but he did obtain a GED.  (Tr. 35).  He also "tried community college, but [he] didn't have the money to finish it."  (Tr. 35).

Mr. Lavelle's prior work experience includes employment as a cashier, fork lift operator, janitor, yard worker, oil changer, splicer, and construction laborer (*i.e.*, framing carpenter). (Tr. 47-48, 99, 108, 141).  Mr. Lavelle maintains that he became

---

[2]   In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI under the Social Security Act.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]   42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

disabled on July 25, 2006, due to degenerative disc disease and anxiety. (Tr. 9, 57, 59, 75).

Mr. Lavelle protectively applied for DIB and SSI on February 21, 2007. (Tr. 9, 57, 59). Both claims were denied initially on July 27, 2007. (Tr. 9, 57, 59 ). Mr. Lavelle timely filed a request for a hearing that was received by the Social Security Administration on August 9, 2007. (Tr. 9, 65). The hearing before the ALJ was held on July 9, 2009. (Tr. 9, 29). The ALJ concluded Mr. Lavelle was not disabled as defined by the Social Security Act and denied both his DIB and SSI applications on August 20, 2009. (Tr. 9-24).

Mr. Lavelle filed a request for review on September 15, 2009. (Tr. 4-5). On November 27, 2009, the Appeals Council denied review, which resulted in the final decision of the Commissioner being the ALJ's disability determination that was adverse to Mr. Lavelle. (Tr. 1).

On December 23, 2009, Mr. Lavelle filed his complaint with this court asking for review of the ALJ's decision. (Doc. 1). On May 21, 2010, Mr. Lavelle filed a brief (Doc. 10) in support of his appeal, and on June 17, 2010, the Commissioner followed with his responsive brief. (Doc. 11). This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

3

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 28, 2010.

4

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   20 C.F.R. § 404.1505(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
    (4)    whether the claimant can perform her past work; and
    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Mr. Lavelle had not engaged in substantial gainful activity since the alleged onset date of his disability, *i.e.*, July 25, 2006.  (Tr. 11 ¶ 2).  Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments:  degenerative disk disease (DDD) of the cervical and lumbar areas of the spine status post cervical spine diskectomy, status post left tibia/fibula fracture with open reduction and internal fixation (ORIF), anxiety, depression and history of polysubstance abuse."[5] (Tr. 11 ¶ 3 (citations omitted)).  Accordingly, the ALJ concluded that Mr. Lavelle satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

---

[5] The ALJ also discussed Mr. Lavelle's claimed cardiac impairment and found that it was not severe in light of a lack of any medical records "reflect[ing] the claimant complained of signs or symptoms of a heart impairment to any treating or consulting physician" or indicating "such a diagnosis" by a medical doctor.  (Tr. 13 ¶ 3).

At step three, the ALJ determined that Mr. Lavelle did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12 ¶ 4). Mr. Lavelle does not challenge this determination on appeal.

The ALJ then evaluated Mr. Lavelle's RFC at step four, and the claimant was found to have:

> [T]he residual functional capacity to frequently lift and carry 15 pounds and 20 pounds occasionally. He requires the ability to sit or stand at his option during the work day where he can stand 30 minutes at a time, walk 15 feet at a time, and sit 30 minutes at a time throughout an 8-hour workday. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, [and] reach overhead bilaterally. He cannot work on ladders, ropes or scaffolds, and [should] avoid work around hazardous machinery and unprotected heights for safety reasons. He should avoid concentrated exposure to extreme cold, wetness and humidity. Due to the claimant's anxiety, he should work on low-stress, unskilled work with an SVP of 2 or less involving simple work-related decisions.

(Tr. 13). This RFC determination is consistent with the exertional level of light work.[6] Further, the ALJ accepted the testimony of the vocational expert that the

---

[6] The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide

claimant "could not perform . . . past relevant jobs within the restrictions of the residual functional capacity" that he determined to be applicable to Mr. Lavelle. (Tr. 23; *see also* Tr. 22 ¶ 6).

Because of the ALJ's finding that Mr. Lavelle had no past relevant work experience, it was necessary to continue to step five of the sequential analysis. (Tr. 23-24). Factoring in the Medical-Vocational Guidelines as a framework, and relying upon testimony from the vocational expert, the ALJ concluded that Mr. Lavelle was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 24). Examples of such possible light jobs included employment as an assembler and as a clerk. (Tr. 23-24). Accordingly, the ALJ concluded Mr. Lavelle was not disabled as defined by the Social Security Act, and denied both his DIB and SSI claims. (Tr. 24; Tr. 24 ¶ 11).

## <u>ANALYSIS</u>

This court is limited in its review of the Commissioner's decision in that the

---

range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through October 28, 2010).

Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).   In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).   In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7]

In this appeal, Mr. Lavelle raises several different issues.  (*See generally* Doc. 10).  One of Mr. Lavelle's challenges relates to the ALJ's rejection of the opinion by Dr. Darin Smith ("Dr. Smith"), one of his treating physicians.  (Doc. 10 at 5 ("The Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for according less weight to the opinion of the Plaintiff's

---

[7]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

treating physician when finding that the Plaintiff was not disabled."); see also Tr. 322 ("This [i.e., degenerative disk disease and lumbar spondylosis] has resulted in [Mr. Lavelle's inability to work.")).  The court turns to the lack of any underlying medical opinion by a physician in support of the ALJ's RFC determination that Mr. Lavelle is capable of performing light work with additional restrictions given his collection of severe impairments, and agrees with Mr Lavelle that, under the circumstances of his case, the ALJ committed reversible error.[8]

I.   **IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE IMPACT OF MR. LAVELLE'S COLLECTION OF SEVERE IMPAIRMENTS, THE ALJ'S RFC DETERMINATION THAT HE CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of the his RFC determination, the ALJ relies upon the physical RFC form that Dr. Richard Whitney ("Dr. Whitney") completed on July 25, 2007, after reviewing Mr. Lavelle's records.  (Tr. 22 ("As for opinion evidence, the undersigned generally concurs with the determination of state agency medical personnel that the claimant retains the residual functional capacity to perform the exertional demands of a reduced range of light work as that determination is consistent with the objective

_____

[8] As a result, the court does not reach the merits of the other issues presented on appeal, including those contained in the separately filed Motion to Remand with Submission.

10

clinical findings."); *see also* Tr. 289-296 (Dr. Whitney's physical RFC evaluation)).

In his physical RFC opinion, Dr. Whitney listed cervical DDD as Mr. Lavelle's primary diagnosis, lumbar DDD as his secondary diagnosis, and no other alleged impairments. Also absent from the document is any indication that the functional impact of Mr. Lavelle's status post left tibia/fibula fracture with open reduction and internal fixation (ORIF) was considered by Dr. Whitney in combination with Mr. Lavelle's other severe impairments.

However, the ALJ determined that, in addition to suffering from severe cervical and lumber DDD, Mr. Lavelle also was severely impaired by his ORIF condition. (Tr. 11 ¶ 3). Because the ALJ determined that ORIF was one of Mr. Lavelle's severe physical impairments, the RFC prepared by Dr. Whitney, which fails to even list this as a secondary or alleged condition, much less clarify the degree to which, if any, it was factored into the overall physical functional assessment of Mr. Lavelle, cannot provide substantial evidence that Mr. Lavelle is capable of performing a reduced range of light work.

Moreover, no other records referred to by the ALJ in his decision address the deficiency identified above. For example, Exhibit B18F is a psychiatric review technique prepared by Dr. Peter Sims ("Dr. Sims") on July 27, 2007. Because this evaluation by Dr. Sims is limited in scope to Mr. Lavelle's mental functioning, it does

not lend any support to the ALJ's decision with respect to Mr. Lavelle's physical RFC.

Furthermore, the court has been unable to locate (and Defendant has not pointed to (*see generally* Doc. 12)) a medical source opinion[9] or a physical capacities evaluation conducted by a physician that substantiates Mr. Lavelle is capable of performing light work given his severe cervical DDD, lumbar DDD, and ORIF conditions.  Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination.  *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer to several different records from various medical providers pertaining to Mr. Lavelle within his opinion.  However, for the most part such documentation is reported as raw physical findings applicable to Mr. Lavelle.  (*See, e.g.*, Tr. 15 (discussing records from neurosurgeon Dr. Chad D. Abernathy, from cervical spine x-rays, from Central North Alabama Health Services, from primary physician Dr. Alan B. Wlaker, and orthopedist Dr. Robert A. Ward)).

_____

[9] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'"  SSR 96-5p.

Moreover, with the exception of Dr. Smith's treating source opinion that Mr. Lavelle "was unable to work due to DDD and lumbar spondylosis" which the ALJ assigned little weight (Tr. 19), these records do not offer opinions about the impact of Mr. Lavelle's impairments in <u>vocational</u> terms or attach a physical capacities evaluation of Mr. Lavelle. *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was able to perform her past relevant work:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted

> Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations.  Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Mr. Lavelle's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in his medical records.  Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Mr. Lavelle has no relevant past work experience upon which the ALJ's RFC determination of light work with additional restrictions might be

substantially based, and the ALJ has rejected the treating source opinion offered by Dr. Smith that is favorable to Mr. Lavalle. As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007).

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Mr. Lavelle by a physician that corroborates the ALJ's determination that he has ability to perform light work with certain non-exertional restrictions given his severe impairments of cervical DDD, lumbar DDD, and ORIF, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Likewise, the ALJ's determination that Mr. Lavelle can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## II.    The ALJ's Mental RFC Determination Is Also Deficiently Supported.

Prior to formulating any restrictions relating to Mr. Lavelle's mental RFC, the ALJ determined that he had the severe impairments of anxiety, depression, and a history of polysubstance abuse.  (Tr. 11 ¶ 3).  As for mentally-related vocational limitations, the ALJ concluded that due to Mr. Lavelle's "anxiety, he should work on low-stress, unskilled work with an SVP of 2 or less involving simple work-related restrictions."  (Tr. 13 ¶ 5).

Later in his decision, the ALJ reasoned:

> The records of evidence overall indicate the claimant may have some degree of anxiety and depression, although no doctor has diagnosed such impairments and the claimant has not sought mental health treatment even at the free clinic.  The records also indicate that some of the claimant's complaints of mental symptoms may have been produced or exacerbated by substance abuse.  Even giving the claimant the benefit of the doubt and assessing he has severe impairments of anxiety and depression; there is nothing in the evidence which indicates these impairments result in a condition that would prevent him from performing some type of work.  The claimant's daily activities indicate he has no difficulty getting out, meeting people, getting along with people, following instructions, maintaining concentration and memory for at least 2-hour periods during an 8-hour workday, and performing

16

other mental demands of work.  No doctor has opined the claimant has disabling mental impairments.  <u>The claimant's complaints of severe symptoms and limitations of mental impairments are only partially credible and not to the extent he alleges.</u>

(Tr. 21(emphasis added)).  Finally, the ALJ observed that the "<u>[s]tate agency medical personnel determined the claimant has no severe mental impairment</u>, but as previously stated, <u>even considering the claimant has severe mental impairments</u>, they are not shown to have resulted in disabling limitations[.]"  (Tr. 22 (citation omitted) (emphasis added)).

Here, the record lacks any mental RFC performed on Mr. Lavelle by a physician.  Instead, there is only one physician-generated mentally-related assessment of Mr. Lavelle that is in the record.  Specifically, Dr. Sims, after reviewing Mr. Lavelle's file, completed a psychiatric review technique at the state agency level on July 27, 2007. (Tr. 303-316).  In this report, Dr. Sims disavowed Mr. Lavelle's allegations of depression and anxiety.  (Tr. 315).  Moreover, Dr. Sims suggested no mentally-related restrictions applicable to Mr. Lavelle's ability to work.  Therefore, Dr. Sims's psychiatric review cannot substantially support the mental component of the ALJ's RFC determination.

Further, the ALJ's decision points to no underlying medical opinion (and the court also has not been able to locate such proof based upon its own review) which

corroborates his conclusion about the degree to which Mr. Lavelle should be mentally restricted in his work due to his severe impairments of anxiety, depression, and substance abuse.  Instead, akin to the physical RFC, it appears that the ALJ derived the mental limitation for Mr. Lavelle based upon his review and interpretation of raw medical information that he found in the record.  (*See, e.g.*, Tr. 17 (As reported in June 27, 2007, Mr. Lavelle "took gabapentin, 'a nerve pill' in the morning and 2 at night)).[10]  Alternatively, it appears that the ALJ arbitrarily arrived at this mental restriction without the benefit of any corroborating functional proof provided by a physician.  Accordingly, the mental component of the ALJ's RFC determination is also not supported by substantial evidence, and a remand to the Commissioner is appropriate due to this additional reason.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.  Accordingly, the decision of the Commissioner will be remanded by separate order.

---

[10]    *See*   http://bipolar.about.com/od/neurotin/Neurontin.htm   ("Neurontin (generic name gabapentin) is an anticonvulsant often prescribed as a mood stabilizer for those with bipolar disorder (manic depression).") (accessed on Nov. 5, 2010) (emphasis added).

18

**DONE** and **ORDERED** this the 15th day of November, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge